350 So.2d 578 (1977)
CHARLOTTE COUNTY, a Political Subdivision of the State of Florida, and Englewood Disposal Company, Inc., Appellants,
v.
Walter L. FISKE and Lucy E. Fiske, Husband and Wife, Vernon Ridenhour and Geraldine Ridenhour, Husband and Wife, Emil R. Sweptson, Richard G. Bowman, Ada Bondi and Gertrude Lingeman, Appellees.
No. 76-1870.
District Court of Appeal of Florida, Second District.
October 12, 1977.
*579 H. William Thompson, County Atty., Punta Gorda, for appellant Charlotte County.
Leo Wotitzky of Wotitzky, Wotitzky, Johnson, Mandell & Batsel, Punta Gorda, for appellant Englewood Disposal Company, Inc.
William R. Korp of Korp, Wheeler & McGill, P.A., Venice, for appellees.
McNULTY, Acting Chief Judge.
Appellants appeal from an order voiding a county ordinance regulating garbage and trash collection and disposal in a certain unincorporated area of Charlotte County. We reverse.
In 1975 Charlotte County had a garbage problem because the county's dumps were ordered closed and were replaced by a single sanitary land fill located in the southern part of the county. The Englewood area, about 40 miles from the land fill, was becoming inundated with garbage illegally dumped on roadside ditches and other public ways. In an attempt to alleviate the problem, the assailed ordinance was enacted creating the West Charlotte Sanitation District.
The ordinance established a mandatory garbage disposal system financed by an annual $51.00 "special assessment" on each residential unit in the district. While commercial properties within the district were not assessed, they were nonetheless required by the ordinance either to contract for the service with the franchised disposal company for the district (appellee Englewood Disposal Company) or to obtain a permit to haul their own garbage.
It is to be further noted at this point that the ordinance was enacted upon a legislative finding that there was an inordinate amount of littering on the public rights of way in the area affected; that the entire $51.00 assessment was payable to the contract franchisee Englewood Disposal Company and no profit inured to the county; and that it was legislatively determined by the county that commercial properties be omitted from the assessment, and be required to arrange otherwise for garbage disposal services, because of the widely *580 varying production of garbage among such commercial properties.
Plaintiffs/appellees, owners of the residences assessed, brought this action to void the ordinance. They prevailed, the trial court having found: (1) that there is no rational basis for distinguishing the properties subject to the assessment and those not; (2) that some of the properties especially benefitted by the assessment are not subject to the assessment; (3) that the ordinance imposes special assessments without construction of any public improvement from the levy; and (4) that the ordinance does not require that the amount of the assessment equal or approximate the benefit. We think he was wrong.
To begin with, while the ordinance before us speaks of the assessment involved as a "special assessment," we are of the view that such a term is a broad one and may embrace various methods and terms of charges collectible to finance usual and recognized municipal improvements and services. Among such charges are what are sometimes called "fees" or "service charges," when assessed for special services. Moreover, these may take the form (at least for lien purposes) of "special assessment."[1] In point, indeed, such charges for garbage disposal were denominated "waste fees" in a Dade County ordinance interpreted by our sister court in the Third District in Turner v. State ex rel. Gruver,[2] wherein they were defined not as a form of taxes but as "special charges" imposed for a "special service" performed by the county. In fact, "service charges" for garbage disposal are expressly authorized by statute. Section 125.01(1)(q), Florida Statutes (1975), provides in material part as follows:
"(1) The legislative and governing body of a county shall have the power to ...
(q) establish ... municipal service taxing or benefit units ... within which may be provided .. garbage and trash collection and disposal ... facilities ... from funds derived from service charges, special assessments, or taxes within such unit... ." (Italics ours.)
Notwithstanding, the trial judge voided such charges in the instant case for the four reasons aforesaid. We summarily dispose of his third reason, viz., that the ordinance imposes a special assessment without construction of a public improvement, by saying that the construction of a public improvement is not necessary. The "improvement" involved may well be simply the furnishing of or making available a vital service, e.g., fire protection[3] or, as here, garbage disposal.[4]
Now, with respect to the trial court's first finding, that there is no rational basis for distinguishing the properties subject to the assessment and those not, it certainly cannot be said that the legislative finding of the distinction between residential units and commercial units based upon a recognition of the widely varying production of garbage among commercial units is without reason. Common experiences compel agreement with such legislative finding. In any case, administrative or legislative determinations or findings of fact are entitled to great weight and ought not be lightly tampered with or voided absent a clear showing that they are arbitrary, oppressive, discriminatory or without basis in reason.[5] Clearly, no such showing was made here.
The trial court's second finding, that some of the properties especially benefitted by the assessment are not subject to the assessment, must also fall. The fees assessed, as we've said, are for a "service"; and only those properties assessed (the residential *581 units) enjoy the service. The mere fact that the community at large, or the commercial properties within the service district, peripherally may also enjoy the cleaner and garbage-free environment does not change this; and the residential owners affected can no more complain of the "service charges" to them any more than the commercial users can be heard to complain when compelled otherwise to dispose of their garbage  the entire matter of garbage and waste disposal, after all, being within the police prerogatives of the county.[6]
Finally, the trial court's fourth reason for voiding the ordinance, i.e., because it does not require that the amount of the assessment equal or approximate the benefit, is also fatally defective. First of all, there is no contention made here that the fees charged for the services furnished are unreasonable as to amounts. Secondly, the total of the charges collected for the total services is paid out to the franchised disposal company and no profit is made by the county (thus, incidentally, there is no improper "tax" aspect inuring to the benefit of the county at large). Thirdly, the entire cost of the services to the residential units is equally distributed among such units. It necessarily follows, therefore, that since all residential units bear equal prorata shares of the costs for equal prorata shares of the service, the proportionate "benefits" equal the apportioned costs. The general rule relating to "special assessment," viz., that the "special benefit" must be commensurate with the "special charge,"[7] is accordingly satisfied.
In sum, we hold that the assailed ordinance is valid and that the service charges provided for therein may be assessed and levied as a "special assessment." In view whereof, the judgment appealed from should be, and it is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
SCHEB and OTT, JJ., concur.
NOTES
[1] See Gleason v. Dade County, 174 So.2d 466 (Fla.3d DCA 1965).
[2] 168 So.2d 192 (Fla.3d DCA 1964).
[3] See South Trail Fire Control District, Sarasota County v. State, 273 So.2d 380 (Fla. 1973); and Fire District No. I of Polk County v. Jenkins, 221 So.2d 740 (Fla. 1969).
[4] See n. 2, supra.
[5] See n. 3, supra.
[6] Cf. Clein v. Lee, 146 Fla. 306, 200 So. 693 (Fla. 1941).
[7] See, e.g., Meyer v. City of Oakland Park, 219 So.2d 417 (Fla. 1969).