SMITH, Acting Chief Judge:
Appellant Fish, representing a class of condominium unit owners and residents of the City of New Smyrna Beach, appeals from a circuit court judgment sustaining the City’s ordinances fixing garbage and trash collection rates for residential and business users. The issue is whether the City’s classifications and charges discriminate unconstitutionally against condominium residents and in favor of business users and residents of single family dwellings.
We find that the substantial difference in charges to condominium residents and to businesses, for the same service, is without a rational basis and is therefore constitutionally deficient. Although there is some apparent whimsy in the City’s charges to condominium residents, as contrasted with the charges to single family dwelling residents, the service to those classes is different, and appellant failed to show that the greater charges they pay are not reasonably related to the different service they receive. We therefore affirm in part, reverse in part, and remand.
For about a year before December 1976, the City’s garbage and trash collection ordinances differentiatéd in both service and charges between kinds of residential units as well as between residential and business units. Single family dwellings and duplexes in conventional New Smyrna neighborhoods require collection services for both garbage cans and uncontained trash at curbside, whereas condominium and apartment residents do not accumulate “trash” [1] as such but deposit all refuse in bulk containers or dumpsters which centrally serve up to about 60 condominium units in common. Recognizing differences in the need for separate “trash” collection as such, the code, before the December 1976 amendment, charged single family dwellings and duplexes $4.00 monthly for semiweekly garbage collection and separate weekly trash collection; charged condominium and apartment dwellers $2.50 monthly for semiweekly garbage collection only; and charged the management of condominiums and apartments for uncontained trash collection only as it was needed, which was rarely. The City’s total charges to condominiums for separate trash collection in 1976, based on cost, was $11.16.
In December 1976, to overcome a deficit in garbage and trash collection service, the City commission resolved that “all structures and units used for dwelling purposes should be served on an equal schedule and billed equally,”[2] and adopted ordinance 40-76, which precipitated this litigation. That ordinance charges the residents of each condominium unit, apartment, single family dwelling, duplex, or mobile home $2.50 per month for semiweekly garbage collection and $1.50 per month for weekly collection of uncontained “trash.” The additional
*309 $1.50 charge to condominium residents, for separate trash collection which they conceive they neither receive or require, exacerbated an existing disparity between rates charged condominium residents and rates charged businesses for garbage service. In 1975 “all business establishments” were classified separately from residences under ordinance 45-75, which imposed rates for refuse collection at businesses varying with the number and size of receptacles and the number of weekly pickups. Businesses use City-approved receptacles ranging in size from 30-gallon cans, for which the minimum monthly service charge is $2.00 for twice-weekly pickup, to eight cubic yard dumpsters, for which the monthly service charge is $60.00 for twice-weekly pickup.
There is a striking difference between the City’s charges under ordinance 45-75 for service to the dumpsters of businesses, and the City’s charges under ordinance 40-76 for the same service to similar dumpsters used by condominium residents. In February 1977 the 1,593 residential units in 24 New Smyrna condominium complexes collected their garbage and trash in 43 such bulk containers, typically of six cubic yards capacity, which typically were emptied twice weekly by the City. Whether at a condominium or business site, the dumpster is mechanically lifted and emptied into a City truck in the same way. But under ordinance 45-75 a business pays $45.00 per month for that service to one dumpster, while the 55 condominium residents in, say, Coronado Cove pay $220.00 for the same service to a single dumpster ($2.50 for garbage plus $1.50 for “trash” X 55). Thus in January 1977 condominium residents using 43 dumpters paid $6,372.00 for collection service, while the business users of 43 comparable containers paid $2,540.20 for the same service.
The City does not defend the disparity in charges on the basis of City costs in either collecting or disposing of refuse. The City has made no cost analysis on the subject, but the City’s financial director could suggest no difference between the City’s cost of service to business dumpsters and the City’s cost of service to condominium dumpsters.
The trial court’s judgment is without findings of fact which would assist us in reconciling the evidence and the judgment. See Surratt v. Fleming, 309 So.2d 614 (Fla. 1st DCA 1975). If possible we must interpolate the missing findings, to square the judgment with the evidence. Jacquin-Florida Distilling Co. v. Reynolds, Smith and Hills, etc., 319 So.2d 604 (Fla. 1st DCA 1975). That cannot be done in this case; there is no substantial evidence in the record suggesting that New Smyrna Beach rationally charges condominiums and businesses differently for the same service.
Ordinances 45-75 and 40-76 operate in an unlawful discriminatory fashion against condominiums in New Smyrna Beach. The established classifications and charges, though superficially plausible, are in fact not reasonably related to
. such factors as the cost of service, the purpose for which the service [is provided] . . ., the quantity or the amount [of service rendered], the different character of the service furnished; the time of its use or any other matter which presents a substantial difference as a ground of distinction.
12 MeQuillin, Municipal Corporations (3rd ed. 1970), section 35.37b, quoted with approval in Pinellas Apartment Association, Inc. v. City of St. Petersburg, 294 So.2d 676 (Fla. 2d DCA 1974). See also 567 Island Corp. v. North Bay Village, 236 So.2d 467, 468 (Fla. 3d DCA 1970), cert, den., 240 So.2d 637 (Fla.1970) (upholding garbage rate differentials justified by “the types of structures involved as located in the defendant city and the differences in the garbage service requirements as related thereto”): Clay Utility Co. v. City of Jacksonville, 227 So.2d 516, 518 (Fla. 1st DCA 1969) (holding it was not proved that the rate differential “cannot be justified on the basis of the cost of furnishing the commodity to the two different classifications of consumers”). Cf. Contractors & Builders Ass’n v. City of Dunedin, 329 So.2d 314 (Fla.1976).
The classification which burdens condominiums in this case is not similar to the *310 classification upheld in State v. City of Miami Springs, 245 So.2d 80 (Fla.1971). There the Supreme Court found no lack of rationality in a sewer service classification that charged single family dwellings a flat $7.00 per month but charged all other users $2.00 per month for each 1,000 gallons of water used, and a minimum of $7.00. Such a classification properly assumes that most single family dwellings require sewer service in roughly the same degree, that measuring precise differences in usage would be more expensive than additional revenues would justify, and that larger users such as apartment houses can more equitably be charged on the basis of water actually used. Similar considerations underlie this Court’s decision in Stone v. Town of Mexico Beach, 348 So.2d 40 (Fla. 1st DCA 1977), cert, den., 355 So.2d 517 (Fla.1978), relying on the Miami Springs decision. The Mexico Beach ordinance charged garbage fees of $3.50 per month for residences regardless of the extent of their occupancy during the year. The fees we upheld were properly predicated on the town’s assumption that residences were intended to be and would be occupied, as indeed the plaintiff’s was for four months out of twelve, and that it was more reasonable to assess a modest flat fee on all residences than to undertake a continuing census of occupancies. New Smyrna Beach has undoubted power to allocate the basic costs of a garbage and trash collection and disposal system equally on all users; but the City has not done that, and there is no rational. justification for the charges imposed on condominium residents as compared to those imposed on businesses for the same service.
Appellant contends that condominium residents receive significantly less garbage and trash collection service than house residents and that the City unlawfully charges them the same fees. That position is not substantiated by this record. Admittedly, there is no separate collection of un-contained “trash” at condominiums, and each condominium residence pays $1.50 monthly for that service. It appears also that the time and labor required to empty a single six-yard container, serving 55 condominium families at Coronado Cove, is demonstrably less than the time and labor necessary to handle numerous garbage cans at the curbside of 55 single family residences in New Smyrna neighborhoods. Yet there are significant countervailing factors: individual homeowners must supply their own garbage cans, carry them to the curb and back, and wash, maintain, and replace their garbage cans; whereas the dumpsters used by condominiums and businesses are provided by the City, at a cost to the City of several hundred dollars each, and the City washes and disinfects the containers at each pickup. This record does not permit quantification of the similarities and differences in the cost of garbage collection from the dumpsters used by a given number of condominium units and the multiple cans used by an equivalent number of houses.
Whatever may be the City’s net cost similarity or differential between garbage collection from condominiums and garbage collection from houses, there is no uncertainty that ordinance 40-76 imposes on condominium residents garbage collection fees which are disproportionately higher than the fees charged for the same service, rendered at the same cost, to businesses. These ordinances are unconstitutional in their preferential treatment of businesses as contrasted with condominiums, but not otherwise. The trial court’s judgment is therefore AFFIRMED in part, REVERSED in part, and the cause is REMANDED for further proceedings.
ERVIN, J., concurs.
MELVIN, J., concurs in part and dissents in part.

. Code section 13-11(b) defines “trash” as “yard clippings, small tree limbs, palm fronds, and small discarded household items of such size as to be unsuitable for containerization.”

. The key recital of ordinance 40-76 was
[T]he City Commission has determined that all structures that are used for dwelling purposes should be under a single classification and that it should be just and equitable to equalize the rates among all units or structures that are in fact used for dwelling purposes and that it is likewise proper and equitable and just to provide equal services and pick-ups within the said classification . . .